## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRENDA RUBIN, derivatively on behalf of PPG INDUSTRIES, INC., | Civil Action No. |
| Plaintiff, | |
| v. | |
| MICHAEL H. MCGARRY, VINCENT J. MORALES, MARTIN H. RICHENHAGEN, MICHAEL W. LAMACH, MELANIE L. HEALEY, GARY R. HEMINGER, VICTORIA F. HAYNES, HUGH GRANT, MICHELE J. HOOPER, JAMES G. BERGES, STEPHEN F. ANGEL, JOHN V. FARACI, and MARK C. KELLY, | **JURY TRIAL DEMANDED** |
| Defendants, | |
| and | |
| PPG INDUSTRIES, INC., | |
| Nominal Defendant. | |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1.      Plaintiff Brenda Rubin ("Plaintiff"), by and through her undersigned attorneys, hereby submits this Verified Shareholder Derivative Complaint (the "Complaint") for the benefit of nominal defendant PPG Industries, Inc. ("PPG" or the "Company") against certain members of its Board of Directors (the "Board") and executive officers seeking to remedy defendants' breaches of fiduciary duties and unjust enrichment from April 24, 2017 through at least May 10, 2018.    Plaintiff makes these allegations upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon information and belief based on the

investigation of undersigned counsel, which includes, without limitation: (a) review and analysis of public filings made by PPG and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by PPG, the Individual Defendants (defined herein), and other related non-parties; (c) review of news articles, stockholder communications, and postings on PPG's website concerning the Company's public statements; (d) pleadings, papers, and any documents filed with and publicly available from a related pending securities fraud class action captioned *Mild v. PPG Industries, Inc.*, No. 2: 18-cv-04231-RGK-JEM (C.D. Ca.) (the "Federal Securities Class Action"); and (e) review of other publicly available information concerning PPG and the defendants.

## NATURE OF THE ACTION

2.      According to its public filings, PPG is a manufacturer and distributer of a variety of paints, coatings, and specialty materials, and was incorporated in Pennsylvania in 1883.  PPG is divided into two reportable segments: Performance Coatings and Industrial Coatings.

3.      On April 19, 2018 PPG issued a press release entitled "PPG Reports First Quarter 2018 Financial Results," which reported the Company's quarterly financial results and disclosed that PPG had received a report concerning potential violations of its accounting policies and identifying certain expenses that should have been accrued in the first quarter.  The press release further reported:

> As PPG's earnings release was being finalized, the company received a report through its internal reporting system concerning potential violations of PPG's accounting policies and procedures regarding the failure to accrue certain specified expenses in the first quarter. ***Based on preliminary review, the company identified approximately $1.4 million of expense that should have been accrued in the first quarter, and the earnings reported in this release reflect the accrual of such $1.4 million of expenses. The report also alleges that there may have been other***

*unspecified expenses, potentially up to $5 million in the aggregate, that were improperly not accrued in the first quarter.* The Audit Committee of the company's Board of Directors is overseeing an investigation of the matters set forth in the report, with the assistance of outside counsel. The company is currently unable to predict the timing or outcome of the investigation and will move with diligence. [Emphasis added]

4.      On May 10, 2018, the Individual Defendants caused PPG to issue a press release entitled "PPG Provides Update on Form 10-Q Filing and Internal Investigation." Therein, it was disclosed that the Company's Audit Committee was "overseeing an investigation of the matters set forth in the report" disclosed on April 19, 2018, and that the "investigation has found evidence that the improper accounting entries were made by certain employees at the direction of the Company's former vice president and controller," Mark C. Kelly ("Kelly"), which had resulted in Kelly's termination:

5.      The press release further reported on the status of the investigation as follows:

The Audit Committee of the Company's Board of Directors is overseeing an investigation of the matters set forth in the report, with the assistance of outside counsel and forensic accountants. ***To date, the investigation has identified the following items not yet reflected in our March 31, 2018 results as reported in our April 19, 2018 press release and which impact the quarter ended March 31, 2018, in addition to the approximately $1.4 million of expenses described above***: (1) failure to record amortization expense in the amount of $1.4 million to correct for amortization of an intangible asset that was inadvertently ***not recorded over a three-year period and discovered in March 2018***; (2) understatement of a health insurance accrued liability in the amount of $500,000; and (3) failure to record an adjustment increasing the value of inventory in our Europe, Middle East and Africa region in the amount of $2.1 million due to inflation of raw materials costs (which, when corrected, would have a positive effect on income in the first quarter of 2018, resulting in a net increase to income from continuing operations before income taxes from these three items of approximately $200,000).

Apart from the investigation, the Company has identified certain inadvertent errors with respect to the quarter ended March 31, 2018. The Company has quantified errors that would result in a net decrease in income from continuing operations before income taxes of approximately $7.8 million but may quantify additional errors prior to the filing of the Company's Quarterly Report on Form 10-Q for the quarter ended March 31, 2018. These errors will be corrected as

appropriate.  [Emphasis added]

6.     In addition to the above disclosures, the Individual Defendants caused the Company to issue the May 10, 2018 press release which warned stockholders that PPG's previously issued financial statements for 2017 "should no longer be relied upon," and that the Company would be delayed in filing its first quarter fiscal 2018 Form 10-Q.

7.     Following this news, shares of the Company's common stock declined in value by over 5 percent.

8.     On June 28, 2018, the Individual Defendants caused PPG to issue a press release announcing that the Audit Committee had completed its internal investigation, and that the Company was restating its previously issued financial statements for the reporting periods ***back through fiscal 2016*** "in order to correct its previously issued financial statements."  Further ,according to the press release, the Company's restated financial statements had, among other things: (i) reduced PPG's net income from continuing operations by $4 million for fiscal 2016 and (ii) reduced PPG's net income from continuing operations by $2 million for fiscal 2017.

9.     Also on June 28, 2018, PPG filed an Amended Annual Report on Form 10-K/A containing the Company's restated financial statements.  Therein, the Company further disclosed that "[t]he investigation also identified certain inadvertent errors with respect to the quarter ended March 31, 2018. Correction of such inadvertent errors, together with the matters discussed in the immediately preceding paragraph, resulted in a ***net decrease in income from continuing operations before income taxes of $5.7 million for the quarter ended March 31, 2018***" (emphasis added).

10.    With respect to the Company's internal control over financial reporting and disclosure controls and procedures, the Form 10-K/A disclosed, "***Management has concluded***

*that a material weakness existed in the Company's internal control over financial reporting as of December 31, 2017* because the Company did not maintain effective controls within its financial close process." (emphasis added).

11.     As a result of the above disclosure, the Securities Action was filed naming the Company, the Company's Chief Executive Office ("CEO") Michael H. McGarry, the Company's Chief Financial Officer ("CFO") Vincent J. Morales ("Morales"), and the Company's former Vice President and Controller Kelly (collectively with PPG, McGarry, and Morales, the "Securities Action Defendants"). The Securities Action alleged violations of the Securities Exchange Act of 1934 (the "Exchange Act") for the issuance of false and misleading statements.

12.     On December 21, 2018, the Honorable R. Gary Klausner ("Judge Klausner") of the U.S. District Court for the Central District of California denied the Securities Action Defendants' motion to dismiss the Securities Action.  On June 5, 2019, the parties to the Securities Action announced that the Securities Action would settle for $25 million.

13.     Pursuant to Pennsylvania law, Plaintiff sent the PPG Board of Directors (the "Board") a pre-suit litigation demand on November 13, 2018 (the "Demand").  A true and correct copy of the Demand is attached hereto as Exhibit A.

14.     On December 17, 2018 Plaintiff's counsel received a response from Mark P. Goodman at the law firm of Debevoise & Plimpton LLP.  Therein, Mr. Goodman informed Paintiff's counsel that the Board had appointed a Special Litigation Committee ("SLC") to investigate the claims in the Demand.   The Board appointed directors John V. Faraci and Melanie L. Healey to the SLC.  A true and correct copy of the December 17, 2018 letter is attached hereto as Exhibit B.

15.     On June 16, 2019, Plaintiff's counsel would again hear from Mr. Goodman.  In a letter to Plaintiff's counsel Mr. Goodman informed counsel that even though the SLC was allegedly already six months into its investigation into the allegations of the Demand, it was supplementing the membership of the SLC and adding directors Catherine R. Smith ("Smith") and Steven A. Davis ("Davis") to the SLC. A true and correct copy of the June 16, 2019 correspondence is attached hereto as Exhibit C.

16.     It has now been fifteen months since the Demand was sent, fourteen months since the SLC was formed, and eight months since the SLC's membership was supplemented for unknown reasons.  To date, Plaintiff has yet to receive a substantive response from the SLC or the Board.

17.     This extended delay in responding to the Demand runs afoul of the guidance provided under Pennsylvania law, unduly prejudices Plaintiff and the Company, and is therefore an improper refusal of the Demand.

## JURISDICTION AND VENUE

18.     Jurisdiction is conferred by 28 U.S.C. §1332. Complete diversity among the parties exists and the amount in controversy exceeds $75,000, exclusive of interests and costs.

19.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

20.     Venue is proper in this Court in accordance with 28 U.S.C. §1391 because: (i) PPG maintains its principal place of business in this District; (ii) one or more of the defendants

either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to PPG, occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

21.     Plaintiff is a current shareholder of PPG and has continuously held PPG stock since April 2015.   Plaintiff is a citizen of Israel.

22.     Nominal defendant PPG is a Pennsylvania corporation with principal executive offices located at One PPG Place, Pittsburgh, Pennsylvania.  According to its public filings, PPG manufactures and distributes a broad range of paints, coatings, and specialty materials.  PPG is a citizen of Pennsylvania.

23.     Defendant Michael H. McGarry ("McGarry") is PPG's Chairman of the Board and has been since September 2016; Chief Executive Officer ("CEO") and has been since September 2015; and a director and has been since July 2015.  Defendant McGarry is a citizen of Pennsylvania.

24.     Defendant Vincent J. Morales ("Morales") is PPG's Senior Vice President and Chief Financial Officer ("CFO") and has been since March 2017.  Defendant Morales is a citizen of Pennsylvania.

25.     Defendant Martin H. Richenhagen ("Richenhagen") is a PPG director and has been since July 2007. Defendant Richenhagen is also the Chairman of PPG's Audit Committee and has been since at least March 2017.  Defendant Richenhagen is a citizen of Georgia.

26.     Defendant Michael W. Lamach ("Lamach") is a PPG director and has been since April 2015. Defendant Lamach is also a member of PPG's Audit Committee and has been since at least March 2017. Defendant Lamach is a citizen of North Carolina.

27.     Defendant Healey is a PPG director and has been since July 2016. Defendant Healey is also a member of PPG's Audit Committee and has been since at least March 2017. Defendant Healey is a citizen of Ohio.

28.     Defendant Gary R. Heminger ("Heminger") is a PPG director and has been since July 2017. Defendant Heminger is also a member of PPG's Audit Committee and has been since at least March 2018.  Defendant Heminger is a citizen of Ohio.

29.     Defendant Victoria F. Haynes ("Haynes") is a PPG director and has been since October 2003. Defendant Haynes is also a member of PPG's Audit Committee and has been since at least March 2017. Defendant Haynes is a citizen of North Carolina.

30.     Defendant Hugh Grant ("Grant") is PPG's Lead Independent Director and has been since at least March 2017, and a director and has been since September 2005. Defendant Grant is a citizen of Missouri.

31.     Defendant Michele J. Hooper ("Hooper") is a PPG director and has been since September 1995. Defendant Hooper is a citizen of Illinois.

32.     Defendant James G. Berges ("Berges") is a PPG director and has been since October 2000.  Defendant Berges is a citizen of Florida.

33.     Defendant Stephen F. Angel ("Angel") is a PPG director and has been since December 2010.  Defendant Angel is a citizen of Connecticut.

34.     Defendant Faraci is a PPG director and has been since October 2012. Defendant Faraci is a citizen of Connecticut.

35.     Defendant Kelly was PPG's Vice President, Controller, and Principal Accounting Officer from September 2013 to April 2018, when he was placed on administrative leave. Defendant Kelly's employment was terminated in May 2018.  Defendant Kelly is a citizen of Pennsylvania.

36.     Collectively, McGarry, Morales, Richenhagen. Lomach, Heminger, Haynes, Grant, Hooper, Berges, Angel, Faraci, and Kelly are referred to herein as the "Individual Defendants."

## DEFENDANTS' DUTIES

37.     By reason of their positions as officers, directors, and/or fiduciaries of PPG and because of their ability to control the business and corporate affairs of PPG, Defendants owed PPG and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage PPG in a fair, just, honest, and equitable manner.  Defendants were and are required to act in furtherance of the best interests of PPG and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.  Each director and officer of the Company owes to PPG and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

38.     Defendants, because of their positions of control and authority as directors and/or officers of PPG, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.  Because of their advisory, executive, managerial, and directorial positions with PPG, each of the Defendants had knowledge of material non-public information regarding the Company.

39.     To discharge their duties, the officers and directors of PPG were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.  By virtue of such duties, the officers and directors of PPG were required to, among other things:

> (a) Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;
>
> (b) Exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority; and
>
> (c) When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

40.     Pursuant to the Audit Committee's Charter, the purpose of the Audit Committee is to assist the Board of Directors in oversight of:

• the integrity of the Company's financial statements;

• the Company's compliance with legal and regulatory requirements;

• the independent registered public accounting firm's qualifications and independence

• the performance of the Company's internal audit function and the independent registered public accounting firm; and

• prepare the report that SEC rules require be included in the Company's annual proxy statement.

41.     Specifically "[w]ith respect to financial reporting and internal controls" the members of the Audit Committee are required to:

> (a) Tell management, the internal auditing department, and the independent registered public accounting firm that they are expected to provide to the

Committee timely information as to items of significance impacting upon financial reporting;

(b) Consider any reports or communications (and management's responses thereto) submitted to the Committee by the independent registered public accounting firm required by or referred to in Statements on Auditing Standards No. 61, as amended;

(c) Consider any significant matters arising from any audit, including any difficulties the independent registered public accounting firm encountered in the course of the audit and the Company's response;

(d) Provide sufficient opportunity for the internal and independent auditors to meet with the members of the Committee without members of management present. Additionally, the Committee shall have the opportunity to meet separately with management;

(e) Discuss earnings releases, as well as the type of financial information provided to analysts and ratings agencies;

(f) Review the form of opinion the independent registered public accounting firm proposes to render on the annual financial statements; and

(g) Review with management, the internal auditing department and the independent registered public accounting firm, as appropriate, (i) major issues regarding accounting principles and financial statement presentations, including any significant changes in the Company's selection or application of accounting principles; (ii) any major issues as to the adequacy of the Company's internal controls over financial reporting and disclosure controls and procedures, including the independent registered public accounting firm's report on the Company's internal control over financial reporting; (iii) analyses prepared by management and/or the independent registered public accounting firm setting forth significant financial reporting issues and judgments made in connection with the preparation of the financial statements, including analyses of the effects of alternative GAAP methods on the financial statements; (iv) the effect of regulatory and accounting initiatives, as well as off-balance sheet structures, on the financial statements of the Company; and (v) discuss any fraud, regardless of materiality, involving management or other employees having a significant role in internal controls over financial reporting.

(h) Annually, meet with management to review (a) the application and administration of all director and employee codes of conduct and ethics adopted by the Company (collectively, the "Codes") and the procedures for identifying, pursuing and investigating any alleged violation of the Codes, and

(b) the implementation and effectiveness of the Company's programs and strategies designed to foster compliance with the Codes;

(i) Review and discuss the Company's guidelines and policies with respect to risk assessment and risk management, including the Company's major financial risk exposures and the steps that have been taken to monitor and control such exposures; and

(j) Review and discuss with management the Company's disclosures within the footnotes to the Financial Statements and under "Management's Discussion and Analysis of Financial Condition and Results of Operations."

## SUBSTANTIVE ALLEGATIONS

**A.**     **Under the Direction of the Individual Defendants, Mismanage Earnings**

42.     Under the direction of the Individual Defendants, and on their watch, management at PPG was engaged in an earnings management and smoothing scheme through which improper accounting adjustments were made for the purpose of manipulating certain financial metrics.

43.     The goal of this financial manipulation was straightforward: to regularly meet or exceed Wall Street's expectations and give the illusion of growth and profitability.  As alleged in the Securities Action, in quarters where PPG's  adjusted earnings per share ("EPS") was below consensus  analyst expectations, Kelly directed certain  improper  accounting adjustments  after the end of the financial period, and close to the end of the financial close process for that period, in order to improve the adjusted EPS that PPG would be reporting.  These improper accounting adjustments included delaying the recognition of certain expenses and reclassifying certain categories of income, which caused adjusted EPS to be artificially inflated and which was done for the purpose of satisfying consensus analyst expectations.  While these adjustments often had a negative effect on subsequent quarters, these subsequent quarters were ones for which Defendants Kelly and PPG expected a cushion that would allow PPG to still satisfy consensus

adjusted EPS expectations, notwithstanding the belatedly recognized expenses.

44.     For years, the Company regularly met or exceeded Wall Street expectations. Yet that success also turned up the heat on the scheme, increasing the pressure on Kelly to consistently deliver.

45.     Kelly was PPG's Vice President and Controller, and as part of this position, was also the Company's Principal Accounting Officer.  In these roles, Kelly publicly represents that he was the "Principal Accounting Officer responsible for internal and SEC reporting, corporate financial planning and  analysis,  . . . internal controls[,] and SOX compliance."

46.     According to PPG's bylaws, as its Controller, Kelly was an officer of the Company and responsible to "keep or cause to be kept all books of account and accounting records" of PPG. Kelly, as PPG's Controller, was also charged with "determin[ing] all accounting policies and procedures[.]"  PPG's Audit Committee Charter also explains that management – *i.e.,* Kelly – is "responsible for maintaining appropriate accounting and financial reporting principles and policies and internal controls and procedures designed to ensure compliance with applicable accounting standards and laws and regulations.

47.     According to the allegations in the Securities Action, despite Kelly's decades  of experience in auditing, SEC reporting, internal controls, and SOX compliance, Kelly improperly directed his subordinates to override PPG's internal controls in order to make improper adjustments in order to positively impact PPG's income from continuing operations and related financial figures.

48.     On information and belief, Kelly was incentivized to manipulate the income from continuing operations figures to enhance his compensation.  Indeed, as explained in PPG's 2017 and 2018 Proxy Statements, filed with the SEC on March 9, 2017 and March 8, 2018,

respectively, for both the 2016 and 2017 fiscal year, "[a]nnual incentive compensation of PPG's executives and senior managers is partially (30 percent) based on personal goals that tie to overall corporate business goals, with the remainder based on company and business financial performance." The potential payout of the Company performance component of this incentive was largely "measured by adjusted earnings-per-diluted share from continuing operations (weighted 70%)[.]"

49.    Kelly was uniquely positioned to manipulate PPG's financial results in order to positively affect income from continuing operations. Not only was he responsible for internal and SEC financial reporting, internal controls, and SOX compliance, but Kelly was also responsible for corporate financial planning and analysis. Thus, PPG created an opportune environment in which Kelly was able to manipulate PPG's financial results.

**B.    Defendants' False and Misleading Statements**

50.    The manipulation of the Company's financial lead to the Individual Defendants making, or endorsing, false and misleading statements to the public.

51.    On February 16, 2017, PPG filed its Annual Report on Form 10-K for the fiscal year ended December 31, 2016 (the "2016 Form 10-K") with the SEC.  The 2016 Form 10-K was signed by defendants McGarry, Angel, Berges, Faraci, Grant, Haynes, Healey, Hooper, Lamach, and Richenhagen.  The 2016 Form 10-K reiterated the Company's "smoothed" out financial results. In particular, for the fiscal year of 2016, PPG reported in the 2016 Form 10-K: (i) adjusted net income from continuing operations of $1.548 billion; (ii) adjusted earnings per diluted share from continuing operations (adjusted earnings per share ("EPS")) of $5.82; (iii) net income from continuing operations of $564 million; (iv) net income per diluted share from continuing operations (EPS) of $2.11; (v) net income of $877 million; (vi) unallocated corporate

expenses of $207 million; (vii) a business restructuring charge of $197 million; (viii) selling, general, and administrative expenses of $3.662 billion, which included total stock-based compensation of $39 million; and (ix) other income of $176 million.

52.     Further, defendants McGarry, Angel, Berges, Faraci, Grant, Haynes, Healey, Hooper, Lamach, and Richenhagen claimed in the 2016 Form 10-K that the statements were prepared in accordance with GAAP and that the Company maintained effective internal controls over financial reporting.  In particular, the 2016 Form 10-K stated:

> We are responsible for the preparation of the financial statements included in this Annual Report. The financial statements were prepared in accordance with accounting principles generally accepted in the United States of America and include amounts that are based on the best estimates and judgments of management.
>
> \*       \*       \*
>
> Our evaluation included reviewing the documentation of our controls, evaluating the design effectiveness of our controls and testing their operating effectiveness. Based on this evaluation we have concluded that, as of December 31, 2016, the Company's internal controls over financial reporting were effective.

53.     On April 20, 2017, the Company issued a press release announcing its financial results for the first quarter of the 2017 fiscal year.  Defendant McGarry bragged in the press release that PPG's adjusted earnings per diluted share increased by more than 6% during the first quarter, reaching $1.35. The press release disclosed the additional key metrics for the first quarter: (i) adjusted net income from continuing operations of $351 million; (ii) net income from continuing operations of $334 million; (iii) net income per diluted share from continuing operations (EPS) of $1.29; (iv) net income of $334 million; (v) net sales of $3.569 billion; (vi) selling, general and administrative expenses of $896 million; and (vii) other income of $11 million, net of other charges.

54.     On April 24, 2017 the Company filed its Quarterly Report on Form 10-Q for the first quarter ended March 31, 2017 (the "Q1 2017 Form 10-Q") with the SEC.  The Q1 2017 Form

10-Q contained mostly the same financial information discussed in the April 20, 2017 press release

regarding the first quarter results, except it separately reported other income of $25 million and

other charges of $14 million. The press release combined these two amounts. The Q1 2017

Form 10-Q also contained a discussion on the evaluation of the Company's disclosures controls

and procedures. According to the filing, these controls were effective. In particular, the Q1 2017

Form 10-Q stated:

> Evaluation of disclosure controls and procedures. Based on their evaluation as of
> the end of the period covered by this Form 10-Q, the Company's principal
> executive officer and principal financial officer have concluded that the Company's
> disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e)
> under the Securities Exchange Act of 1934 (the "Exchange Act")) are effective to
> ensure that information required to be disclosed by the Company in reports that it
> files or submits under the Exchange Act is recorded, processed, summarized and
> reported within the time periods specified in Securities and Exchange Commission
> rules and forms and to ensure that information required to be disclosed by the
> Company in the reports that it files or submits under the Exchange Act is
> accumulated and communicated to the Company's management, including its
> principal executive and principal financial officers, as appropriate, to allow timely
> decisions regarding required disclosure.

55. On July 20, 2017, PPG issued a press release announcing its results for the second

quarter of the 2017 fiscal year. Again, as defendant McGarry pointed out in the press release, the

Company's adjusted earnings per diluted share increased 6% year-over-year, reaching $1.83.

Individual Defendant McGarry highlighted the Company's "aggressive cost management."

56. The Individual Defendants reiterated these results in its Quarterly Report on Form

10-Q for the second quarter ended June 30, 2017 (the "Q2 2017 Form 10-Q"), filed with the SEC

on July 21, 2017. Like the Q1 2017 Form 10- Q, the Individual Defendants claimed that "[t]he

condensed consolidated financial statements included herein...have been prepared following the

requirements of the Securities and Exchange Commission and accounting principles generally

accepted in the United States of America," and that the Company's controls and procedures were

effective.

57.     On October 19, 2017, the Individual Defendants issued a press release announcing its financial results for the third quarter of the 2017 fiscal year. The key financial metrics the Company disclosed in the press releases were: (i) adjusted net income from continuing operations of $392 million; (ii) adjusted earnings per diluted share from continuing operations (adjusted EPS) of $1.52; (iii) net income from continuing operations of $392 million; (iv) net income per diluted share from continuing operations (EPS) of $1.52; (v) net income of $609 million; (vi) cost of sales of $2.1 billion; and (vii) selling, general and administrative expenses $905 million.

58.     The next day, the Company filed its Quarterly Report on Form 10-Q for the third quarter ended September 30, 2017 (the "Q3 2017 Form 10-Q") with the SEC. The Q3 2017 Form 10-Q reiterated the financial results of the October 19, 2017 press release. In addition, the Q3 2017 Form 10-Q claimed that "[t]he condensed consolidated financial statements included herein... have been prepared following the requirements of the Securities and Exchange Commission and accounting principles generally accepted in the United States of America." The Q3 2017 Form 10-Q, also contained a statement that the Company's internal disclosures controls and procedures were reviewed and effective."

59.     On February 15, 2018, the Company filed its Annual Report on Form 10-K for the fiscal year ended December 31, 2017 (the "2017 Form 10-K") with the SEC. The 2017 Form 10-K was signed by defendants McGarry, Morales, Kelly, Angel, Berges, Faraci, Grant, Haynes, Healey, Heminger, Hooper, Lamach, and Richenhagen. These defendants reiterated the financial results discussed above, except for the following changes due to a $37 million higher net charge than what was announced in the January 18, 2018 press release "related to the enactment of the

U.S. Tax Cuts and Jobs Act": (i) adjusted net income from continuing operations of $1.513 billion; (ii) net income from continuing operations of $1.371 billion; (iii) net income per diluted share from continuing operations (EPS) of $5.32; and (iv) net income of $1.591 billion. In addition, the breakdown between other income and other charges was detailed, with PPG reporting other charges of $64 million and other income of $154 million for the 2017 fiscal year.

60.     The 2017 Form 10-K also claimed that the Company's financial results were prepared in accordance with GAAP and  that the Company's internal controls over  financial reporting were effective. In particular, the 2017 Form 10-K stated in the "Management Report: Responsibility for Preparation of the Financial Statements and Establishing and Maintaining Adequate Internal Control Over Financial Reporting" section:

> We are responsible for the preparation of the consolidated financial statements included in this Annual Report. The consolidated financial statements were prepared in accordance with accounting principles generally accepted in the United States of America and include amounts that are based on the best estimates and judgments of management.
>
> We are also responsible for establishing and maintaining adequate internal control over financial reporting as defined in Rules 13a-15(f) and 15d-15(f) under the Securities Exchange Act of 1934, as amended. Internal control over financial reporting, no matter how well designed, have inherent limitations. Therefore, a system of internal control over financial reporting can provide only reasonable assurance and may not prevent or detect misstatements. In addition, because of changing conditions, there is risk in projecting any evaluation of internal controls to future periods.
>
> We conducted an evaluation of the effectiveness of the Company's internal control over financial reporting as of December 31, 2017. In making this evaluation, we used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission (COSO) in *Internal Control - Integrated Framework (2013)*. Our evaluation included reviewing the documentation of our controls, evaluating the design effectiveness of our controls and testing their operating effectiveness. Based on this evaluation we have concluded that, as of December 31, 2017, the Company's internal controls over financial reporting were effective.
>
> Based on their evaluation as of the end of the period covered by this Form 10-K,

the Company's principal executive officer and principal financial officer have concluded that the Company's disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934 (the "Exchange Act")) are effective to ensure that information required to be disclosed by the Company in reports that it files or submits under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in Securities and Exchange Commission rules and forms and to ensure that information required to be disclosed by the Company in the reports that it files or submits under the Exchange Act is accumulated and communicated to the Company's management, including its principal executive and principal financial officers, as appropriate, to allow timely decisions regarding required disclosure.

61. As alleged in the sustained Securities Action detailed herein, these statements were each improper when made because they failed to disclose and misrepresented the following material, adverse facts, which the Individual Defendants knew, consciously disregarded, or were reckless in not knowing:

(a) That PPG's financial results were materially misstated because of defendant Kelly's illicit earnings management scheme and improper accounting entries, and the remaining Individual Defendants' failure to implement effective internal controls, including, among other matters, misstating adjusted net income from continuing operations, adjusted net income from continuing operations per diluted share (adjusted EPS), net income from continuing operations, net income from continuing operations per diluted share (EPS), net sales, other income, net income, and PPG's amortization and selling, general and administrative expenses;

(b) PPG's financial results and statements were not presented in accordance with GAAP and that those financial statements/results were materially misstated because of defendant Kelly's illicit earnings management scheme and improper accounting entries;

(c) PPG's internal controls over financial reporting were not effective as of the time these statements were issued and a material weakness existed in the Company's internal control over financial reporting;

(d) Defendant Kelly "directed his subordinates to improperly override the Company's internal controls during the Company's financial close process, which directions were followed and not disclosed to others in senior management, the Audit Committee or the Company's independent registered public accounting firm and not otherwise detected by the Company's internal controls."

## C.     **The Truth Emerges**

62.    On April 19, 2018 PPG issued a press release entitled "PPG Reports First Quarter 2018 Financial Results," which reported the Company's quarterly financial results and disclosed that PPG had received a report concerning potential violations of its accounting policies and identifying certain expenses that should have been accrued in the first quarter.  The press release further reported:

> As PPG's earnings release was being finalized, the company received a report through its internal reporting system *concerning potential violations of PPG's accounting policies and procedures regarding the failure to accrue certain specified expenses in the first quarter.* Based on preliminary review, the company identified approximately $1.4 million of expense that should have been accrued in the first quarter, and the earnings reported in this release reflect the accrual of such $1.4 million of expenses. The report also alleges that there may have been other unspecified expenses, potentially up to $5 million in the aggregate, that were improperly not accrued in the first quarter. The Audit Committee of the company's Board of Directors is overseeing an investigation of the matters set forth in the report, with the assistance of outside counsel. The company is currently unable to predict the timing or outcome of the investigation and will move with diligence. [Emphasis added]

63.    On May 10, 2018, the Individual Defendants caused PPG to issue a press release entitled "PPG Provides Update on Form 10-Q Filing and Internal Investigation."  Therein, the Company disclosed that its Audit Committee was "overseeing an investigation of the matters set forth in the report" disclosed on April 19, 2018, and that the "investigation has found evidence that the improper accounting entries were made by certain employees at the direction of the

Company's former vice president and controller," Kelly, which had resulted in Kelly's

termination.  The press release further reported on the status of the investigation as follows:

> The Audit Committee of the Company's Board of Directors is overseeing an
> investigation of the matters set forth in the report, with the assistance of outside
> counsel and forensic accountants. ***To date, the investigation has identified the
> following items not yet reflected in our March 31, 2018 results as reported in
> our April 19, 2018 press release and which impact the quarter ended March 31,
> 2018, in addition to the approximately $1.4 million of expenses described above***:
> (1) failure to record amortization expense in the amount of $1.4 million to correct
> for amortization of an intangible asset that was inadvertently ***not recorded over a
> three-year period and discovered in March 2018***; (2) understatement of a health
> insurance accrued liability in the amount of $500,000; and (3) failure to record an
> adjustment increasing the value of inventory in our Europe, Middle East and
> Africa region in the amount of $2.1 million due to inflation of raw materials costs
> (which, when corrected, would have a positive effect on income in the first
> quarter of 2018, resulting in a net increase to income from continuing operations
> before income taxes from these three items of approximately $200,000).
>
> ***Apart from the investigation***, the Company has identified certain inadvertent
> errors with respect to the quarter ended March 31, 2018. ***The Company has
> quantified errors that would result in a net decrease in income from continuing
> operations before income taxes of approximately $7.8 million but may quantify
> additional errors prior to the filing of the Company's Quarterly Report on Form
> 10-Q for the quarter ended March 31, 2018***. These errors will be corrected as
> appropriate.  [Emphasis added]

64.     In addition to the above disclosures, the Company's May 10, 2018 press release

warned stockholders that PPG's previously issued financial statements for 2017 "should no

longer be relied upon," and that the Company would be delayed in filing its first quarter fiscal

2018 Form 10-Q:

> In light of the matters set forth above relating to periods in 2017, as well as the
> ***ongoing investigation*** with respect to such periods, the Company, in consultation
> with the Audit Committee of the Board of Directors and the Company's
> independent registered public accounting firm, PricewaterhouseCoopers LLP
> ("PwC"), ***concluded that the Company's consolidated financial statements for
> the year ended December 31, 2017 included in its Annual Report on Form 10-
> K and the related report of PwC, and for the quarterly and year-to date periods
> in 2017, should no longer be relied upon***.

The Company is working diligently to complete its investigation, but is currently unable to predict the timing or outcome of the investigation. PPG has self-reported information concerning this investigation to the Securities and Exchange Commission. As a result of the ongoing investigation, PPG will not be able to file its Quarterly Report on Form 10-Q for the quarter ended March 31, 2018 by the deadline of May 10, 2018 and has filed a Form 12b-25 Notification of Late Filing. PPG is currently unable to predict when it will be able to file its Quarterly Report. [Emphasis added]

65.     Following this news, shares of the Company's common stock declined in value by over 5 percent.

66.     On June 28, 2018, PPG issued a press release announcing that the Audit Committee had completed its internal investigation, and that the Company was restating its previously issued financial statements for the reporting periods **back through fiscal 2016** "in order to correct its previously issued financial statements."   Further according to the press release, the Company's restated financial statements had, among other things: (i) reduced PPG's net income from continuing operations by $4 million for fiscal 2016 and (ii) reduced PPG's net income from continuing operations by $2 million for fiscal 2017.

67.     Also on June 28, 2018, PPG filed an Amended Annual Report on Form 10-K/A containing the Company's restated financial statements.   Therein, the Company further disclosed that "[t]he investigation also identified certain inadvertent errors with respect to the quarter ended March 31, 2018. Correction of such inadvertent errors, together with the matters discussed in the immediately preceding paragraph, resulted in a **net decrease in income from continuing operations before income taxes of $5.7 million for the quarter ended March 31, 2018**" (emphasis added). With respect to the Company's internal control over financial reporting and disclosure controls and procedures, the Form 10-K/A disclosed:

Management has concluded that a material weakness existed in the Company's internal control over financial reporting as of December 31, 2017 because the Company did not maintain effective controls within its financial close process. …

This material weakness resulted in misstatements in the Company's annual financial statements that were not prevented or detected on a timely basis and led to the restatement described above. Based on this evaluation, management has concluded that, as of December 31, 2017, the Company's internal control over financial reporting was ineffective.

*        *        *

In connection with the restatement described above, the Company's principal executive officer and principal financial officer re-evaluated the effectiveness of our disclosure controls and procedures and ***have concluded that PPG's disclosure controls and procedures were not effective***.

*        *        *

Additionally, in connection with the restatement described above, the Company's principal executive and principal financial officers have reassessed the effectiveness of the Company's internal control over financial ***reporting as of December 31, 2016*** and, due to the existence of the material weakness in internal control over financial reporting … ***have determined that the Company's internal control over financial reporting was not effective as of such date***. … Also, in connection with the restatement described above, the Company's principal executive officer and principal financial officer reevaluated the effectiveness of our disclosure controls and procedures and have concluded that PPG's disclosure controls and procedures were not effective as of December 31, 2016. [Emphasis added]

### D.     The Securities Action is Sustained

68.     The Securities Action was filed shortly after these disclosures came to light.  The Securities Action alleged that the Securities Action Defendants violated the Exchange Act by making materially false and misleading statements to the public.

69.     On December 21, 2018, Judge Klausner denied the Securities Action Defendants' motion to dismiss the Securities Action.  Judge Klausner did so despite the heightened pleading standards under the Private Securities Litigation Reform Act ("PSLRA").  More specifically, Judge Klausner conclude that the false financial statements were material misstatements and that the Securities Action Defendants acted with scienter.

70.     On June 5, 2019, the parties to the Securities Action announced that the Securities

Action would settle for $25 million.

## DERIVATIVE AND DEMAND ALLEGATIONS

71.     Plaintiff brings this action derivatively in the right and for the benefit of PPG to redress the breaches of fiduciary duty and other violations of law by Defendants.

72.     Pursuant to Pennsylvania law, Plaintiff sent the Demand to the Board on November 13, 2018.  A true and correct copy of the Demand is attached hereto as Exhibit A.

73.     On December 17, 2018 Plaintiff's counsel received a response from Mark P. Goodman at the law firm of Debevoise & Plimpton LLP.  Therein, Mr. Goodman informed Paintiff's counsel that the Board had appointed a SLC to investigate the claims in the Demand. The Board appointed directors John V. Faraci and Melanie L. Healey to the SLC.  A true and correct copy of the December 17, 2018 letter is attached hereto as Exhibit B.

74.     On June 16, 2019, Plaintiff's counsel would again hear from Mr. Goodman.  In a letter to Plaintiff's counsel Mr. Goodman informed that even though the SLC was allegedly already six months into its investigation into the allegations of the Demand, it was supplementing the membership of the SLC and adding directors Smith and Davis to the SLC. A true and correct copy of the June 16, 2019 correspondence is attached hereto as Exhibit C.

75.     Under Pennsylvania law, shareholders are required to make a pre-suit demand on a Pennsylvania corporation.  Yet with that requirement comes an expectation that the the board of directors of a Pennsylvania corporation will *act*.

76.     Pennsylvania has adopted certain sections of the American Law Institute Principles of Corporate Governance: Analysis and Recommendations ("ALI Principles").  ALI § 7.03 states:

(a) Before commencing a derivative action, a holder or a director should be required to make a written demand upon the board of directors of the corporation, requesting it to prosecute the action or take suitable corrective measures, unless demand is excused under § 7.03(b).  The demand should give notice to the board, with reasonable specificity, of the essential facts relied upon to support each of the claims made therein.

* * *

(c) Demand on shareholders should not be required.

(d) Except as provided in § 7.03(b), the court should dismiss a derivative action that is commenced prior to the response of the board or a committee thereof to the demand required by § 7.03(a), *unless the board or committee fails to respond within a reasonable time.*

(emphasis added).

77.     Comment (f) to ALI Principles section 7.03 provides sixty days as an example of a reasonable amount of time to respond, and explicitly states that a delay of six months or more "would often prejudice the plaintiff." The comment continues that "If the corporation fails to undertake and complete its inquiry within a reasonable period following demand (which period should never exceed several months even when a study is undertaken and seldom should be that long), the plaintiff may file the action, and it should not be deemed premature."

78.     It has now been over fifteen months since the Demand was sent, fourteen months since the SLC was formed, and eight months since the SLC's membership was supplemented for unknown reasons.  To date, Plaintiff has yet to receive a substantive response from the SLC or the Board.  It is time for this derivative action to move forward.

## COUNT I

### AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY

79.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

80.     As alleged in detail herein, each of the Individual Defendants had a duty to ensure that PPG disseminated accurate, truthful and complete information to its shareholders.

81.     As alleged herein, each of the Defendants had a fiduciary duty to, among other things, exercise good faith to ensure that the Company's financial statements were prepared in accordance with GAAP, and, when put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

82.     Defendants violated their fiduciary duties of loyalty, and good faith by causing or allowing the Company to disseminate to PPG shareholders materially misleading and inaccurate information through, inter alia, SEC filings and other public statements and disclosures as detailed herein.  These actions could not have been a good faith exercise of prudent business judgment.

83.     As a direct and proximate result of Defendants' foregoing breaches of fiduciary duties, the Company has suffered significant damages, as alleged herein.

## COUNT II

### AGAINST ALL DEFENDANTS FOR UNJUST ENRICHMENT

84.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

85.     By their wrongful acts and omissions, the Defendants were unjustly enriched at

the expense of and to the detriment of PPG.

86.     Plaintiff, as a shareholder and representative of PPG, seeks restitution from these Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by these Defendants, and each of them, from their wrongful conduct and fiduciary breaches.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A.     Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties;

B.     Directing PPG to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

C.     Awarding to PPG restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the Defendants;

D.     Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.     Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 4, 2020

**THE WEISER LAW FIRM, P.C.**

*s/ James M. Ficaro*
_____

James M. Ficaro (PA Bar No. 308198)
Robert B. Weiser
22 Cassatt Avenue
Berwyn, PA 19312
Telephone: (610) 225-2677
Facsimile: (610) 408-8062
rw@weiserlawfirm.com
jmf@weiserlawfirm.com

**KASKELA LAW LLC**
D. Seamus Kaskela (PA Bar # 204351)
18 Campus Blvd., Suite 100
Newtown Square, PA 19073
Telephone: (484) 258-1585
Facsimile: (888) 715-1740
skaskela@kaskelalaw.com

*Counsel for Plaintiff*